IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA TATUM,<br><br>    Plaintiff,<br><br>    v.<br><br>TERESA SCHWARTZ, JONATHAN ZEH, and LANCE JENSEN, in their individual capacities; and CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Defendants.<br>_____/ | No. 2:06-CV-01440 JAM EFB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY ADJUDICATION |

Plaintiff Stacia Tatum ("Tatum"), a former secretary with the California Department of Corrections and Rehabilitation ("CDCR"), brought this action against defendants Teresa Schwartz ("Schwartz"), Jonathan Zeh ("Zeh"), Lance Jensen ("Jensen") and CDCR (collectively "Defendants") alleging, among other things, hostile work environment sexual harassment and retaliation pursuant to 42 U.S.C. § 1983 and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

("Title VII"). Defendants now move for summary judgment or, in the alternative, summary adjudication pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Tatum filed a cross-motion for summary adjudication. For the reasons set forth below, Defendants' motion is GRANTED and Tatum's cross-motion is DENIED.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tatum worked at the CDCR medical facility in Vacaville (California Medical Facility ("CMF")) from February 1998 until June 10, 2004.[2] Defendant Jensen was a Correctional Plant Manager in the Plant Operation Department ("Plant Ops") during the time Tatum worked at CMF and was her direct supervisor. Defendant Zeh was a Chief Engineer I during the time Tatum worked at CMF. Defendant Schwartz was the Warden at CMF from April 2003 to October 2005.

In September 2001, Tatum began working as an administrative assistant in Plant Ops. As an administrative assistant, Tatum's duties involved various administrative tasks, including obtaining gate clearances, taking minutes at meetings, answering and transferring phone calls, processing time sheets for all

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[2] CMF is a public entity serving as a medical psychiatric institution for the health care needs of the male felon population of California's prisons.

staff and proofreading memos.  Tatum performed additional administrative tasks for Jensen. In addition to her administrative duties, Tatum supervised inmates who performed clerical duties, including an inmate named Oetter.  Tatum supervised Oetter for approximately one week in April 2004.  She ceased doing so, however, after discovering that he had been convicted of rape.  In June 2007, Oetter was reassigned to a different work area.

On or before May 13, 2004, Tatum complained to Ruben Perez, an Equal Employment Opportunity ("EOC") counselor, that Jensen and Zeh had sexually harassed her.  On May 14, 2004, Schwartz was informed of Tatum's allegations against Jensen and Zeh. Thereafter, Schwartz assigned Lieutenant Damino Cano to conduct an internal fact-finding inquiry, which commenced on May 20, 2004.  Tatum alleges that in June 2004 she complained directly to Schwartz about the sexually hostile working environment created by Jensen and Zeh, but Schwartz refused to remedy the situation.  On or about June 8, 2004, Tatum was allegedly offered a transfer to CMF's Education Department.  On or about June 10, 2004 Tatum ceased working at CMF due to an alleged disability, though she allegedly had a final meeting with Schwartz on June 30, 2004.

In her complaint, Tatum alleges that she could not "function or think clearly for several months after she left

3

work in June 2004" as a result of Jensen and Zeh's conduct.  In 2005, she hired an attorney to assist her in obtaining workers' compensation benefits.  Tatum claimed stress injury due to sexual harassment, intimidation and retaliation by Jensen and Zeh, and from being forced to work with an inmate convicted of rape.  On April 28, 2005, Tatum filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation.  On May 6, 2005 Tatum requested a right-to-sue letter from the EEOC.  On June 9, 2005, Tatum received a right-to-sue letter from the EEOC, advising her that she had ninety days to file suit under Title VII.  On November 17, 2005, a workers' compensation ALJ issued an opinion finding that Tatum had been psychiatrically disabled due to the actions of her co-employees.  The ALJ found that Tatum had been "temporarily totally disabled from June 10, 2004 to date and continuing."

In early 2006, Tatum's treating physician, David L. Green ("Green"), sent medical files to CMF indicating that Tatum could return to work provided that she was not placed in the proximity or under the supervision of Jensen or Zeh.  She did not return, however, because she was allegedly offered a lower-paying position at a different facility.  On June 27, 2006 Tatum filed the instant action alleging hostile work environment sexual harassment and retaliation.  Specifically, Tatum alleges that

Jensen and Zeh sexually harassed her by watching her inappropriately, making sexual advances, and forcing her to work in close proximity to an inmate convicted of rape.  Tatum alleges that Zeh "would sneak into her office 30 to 40 times a day and stand behind her watching her."[3]  She alleges that Jensen made inappropriate comments about her clothing and unwelcome sexual advances "suggesting that she and he needed 'to spend more time together.' "  She alleges that Zeh and Jensen did not help her reassign Oetter, and that they intimidated her when she complained.  Tatum further alleges that Schwartz's response to her complaint of harassment was to transfer her to a less desirable position.  Finally, Tatum alleges that when she sought to return to work in May 2006, she was offered a lower-paying position at a different facility.

On July 9, 2006 Tatum filed a second charge of discrimination with the EEOC alleging that CDCR retaliated against her by: (1) not selecting her for a promotion in May 2005; and (2) offering her a lower-paying position at a different facility when she sought to return to work in May 2006.  On August 9, 2006 Tatum received a right-to-sue letter from the EEOC.  On September 1, 2006, Tatum amended her complaint to add a claim for retaliation pursuant to Title VII.

---

[3] Tatum, however, concedes that Zeh never touched or made inappropriate comments to her.

On June 9, 2008, Defendants filed a motion for summary judgment or, in the alternative, summary adjudication.  On June 12, 2008, Tatum filed a cross-motion for summary adjudication.[4]

## II. OPINION

A.   <u>Legal Standard</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  <u>Id.</u> at 324.  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing

---

[4] As a preliminary matter, to the extent Tatum's summary judgment declarations conflict with her deposition testimony, her deposition testimony controls.  <u>See</u> <u>School Dist. No. 1J, Multnomah County v. Acands, Inc.</u>, 5 F.3d 1255, 1264 (9th Cir. 1993); <u>see also</u> <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991) (holding that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Id. at 323. There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). Summary judgment is appropriate if, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

B.   First Claim: Hostile Work Environment Sexual Harassment

Defendants argue that Tatum's first claim, hostile work environment/sexual harassment pursuant to § 1983, is time-barred.

In § 1983 actions, federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable

tolling, except to the extent any of these laws is inconsistent with federal law. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). Prior to January 1, 2003, California's one-year statute of limitations for personal injury actions applied to § 1983 suits in federal court. Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004). Effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury actions is two years. Cal.Code Civ. Proc. § 335.1. Since the last alleged act of sexual harassment occurred after January 1, 2003, the applicable statute of limitations for Tatum's hostile work environment sexual harassment claim is two years. However, because it is undisputed that the last act of sexual harassment occurred more than two years before this action was filed, this claim is time-barred, absent tolling.

As to tolling, Tatum advances two arguments. First, Tatum contends that the limitations period should be tolled because she was "insane" during the relevant period insofar as she was incapable of taking care of her property or transacting business without the substantial assistance of her husband. Second, Tatum contends that the limitations period should be equitably tolled because she suffered from a severe disability during the relevant period. In support of her position, Tatum primarily relies on Dr. Green's deposition testimony, which indicates that Tatum reported symptoms overlapping with a post-traumatic stress

disorder and that she was diagnosed with an adjustment disorder with anxiety and depression.  Dr. Green's testimony further indicates that Tatum was "totally and temporarily disabled" until September 1, 2004.

In California, a statute of limitations is tolled if the plaintiff was "insane" when the claim accrued.  Cal.Code Civ. Proc. § 352.  Insanity under § 352 is defined as a condition of "mental derangement" that renders the individual "incapable of caring for his or her property or transacting business, or understanding the nature or effects of his or her acts."  Hsu v. Mt. Zion Hospital, 259 Cal.App.2d 562, 571 (1968); cf. Feeley v. Southern Pacific Transportation Co., 234 Cal.App.3d 949, 951-52 (1991) (tolling proper under § 352 for time during which plaintiff was in a coma immediately after the injury that gave rise to his cause of action); Snyder v. Boy Scouts of America, 205 Cal.App.3d 1318, 1324, (1988) (post-traumatic stress disorder does not constitute "insanity" under § 352 to toll the limitations period).

In the instant case, the Court finds that the tolling of the limitations period is not warranted under § 352.  Nothing in the extensive record before the Court indicates that Tatum suffered from a condition of "mental derangement" during the relevant period that rendered her incapable of caring for her property or transacting business, or understanding the nature or

effects of her acts.  Contrary to Tatum's assertion, Dr. Green's testimony does not support a finding that Tatum was "insane" under § 352.  Dr. Green's testimony indicates that from July 2004 to October 2004, Tatum "wouldn't have been capable in some circumstances" of transacting business or making a "big decision" "if it involved complex decision-making and focus and concentration and a clear head" because "she was tired most of the time and preoccupied and emotionally prone to becoming emotional."  Green Dep. at 107-108.  Dr. Green's testimony further indicates that Tatum could have made complex decisions if she had assistance from somebody, such as "the counsel of a friend, a doctor, an attorney . . ."  Green Dep. at 108-109.  Dr. Green testified that Tatum's symptoms were "fairly broad rang[ing] from being tense and a little obsessive to being somatically ridden with stomach aches, headaches, tiredness from poor sleep and nightmares."  Green Dep. at 110.  Dr. Green identified Tatum's chief complaint as the loss of function due to poor sleep, with major concerns about returning to work and feelings of dread and apprehension.  Green Dep. at 45.  Dr. Green diagnosed Tatum with an "adjustment disorder with anxiety and depression."  Green Dep. at 45.  In response to the question of whether he felt that Tatum was in any way incapable of understanding the nature of her acts, Dr. Green testified that "[s]he seemed to possess a[n] intact judgment about her basic

acts in the world" as distinguished from complex decisions. Green Dep. at 111.  Based on the foregoing, the Court finds that Tatum did not suffer from a condition of "mental derangement" during the relevant period to justify tolling of the limitations period on the basis that she was "insane" under § 352.

Turning to the issue of whether the limitations period should be equitably tolled, such tolling may be applied when an "extraordinary circumstance" beyond a plaintiff's control made it impossible to file a claim on time, such as mental incapacity.  Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999).  While mental disability may be a basis for equitable tolling in an "extraordinary circumstance," Tatum has not offered sufficient evidence to establish a mental disability of sufficient severity to permit tolling on this basis.  See id. (equitable tolling is proper where "overwhelming evidence" demonstrates that complainant was completely disabled during the limitations period).  In Stoll, unlike here, the evidence indicated that the plaintiff had been "completely psychiatrically disabled during the relevant time period."  Id. Here, Tatum did not offer such overwhelming evidence indicating that she was completely psychiatrically disabled during the relevant period as to be unable to protect her legal rights, as was the case in Stoll.  In fact, Tatum's conduct during the period from June, 2004 to June 2006 shows that she was capable

of many things and understood the nature and effects of her acts.  For instance, Tatum hired a lawyer, successfully pursued a claim for workers' compensation benefits, filed a complaint with the EEOC and requested a right-to-sue letter.  Moreover, as discussed above, the record indicates that Tatum possessed an intact judgment about her basic acts in the world and could have made complex decisions with the assistance of others.  The record further indicates that Tatum was medically cleared to return to work in or about May 2006.  These facts militate against equitable tolling.  Thus, while Tatum has offered evidence of some injury to her psyche, she did not offer overwhelming evidence of an exceedingly compelling nature to justify a finding that her symptoms constituted an "extraordinary circumstance" which prevented her from protecting her legal rights.  See Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996) (a showing of mental illness alone will not toll the limitation period; rather, mental illness tolls a limitation period only if "the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them").  Accordingly, the Court finds that equitable tolling is not warranted.  As such, Tatum's hostile work environment/sexual harassment claim is time-barred and the Court grants summary judgment in favor of Defendants on this claim.

C.  Second Claim: Retaliation

Tatum's second claim, retaliation pursuant to § 1983, alleges violations of her rights under the equal protection clause of Fourteenth Amendment.  However, because this theory of liability for retaliatory conduct falls outside of § 1983, Tatum is precluded from bringing a retaliation claim pursuant to § 1983 predicated upon alleged violations of her equal protection rights.  See Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause"); see also Long v. Laramie County Community College District, 840 F.2d 743, 752 (10th Cir. 1988) (a theory of liability for retaliatory conduct, asserting violations of the equal protection clause does not come within § 1983).

Moreover, even assuming that Tatum could state an actionable claim for retaliation pursuant to § 1983 for violations of her rights under the equal protection clause of the Fourteenth Amendment, the claims of retaliation asserted under this theory of liability are time-barred.  None of the retaliatory conduct alleged under this theory occurred within the two year period prior to the commencement of this action. Accordingly, the Court grants summary judgment in favor of

Defendants on Tatum's second claim, retaliation pursuant to § 1983.

D.  Third Claim: Title VII Retaliation

Defendants argue that Tatum's third claim, retaliation pursuant to Title VII, is time-barred.  Defendants alternatively argue that summary judgment is appropriate with respect to this claim because Tatum cannot make a prima face case of retaliation and, even if she could, she failed to rebut CDCR's legitimate, non-retaliatory reason for the unlawful retaliation alleged. The Court agrees with Defendants' arguments as further explained below.

As an initial matter, the Court notes that only part of this claim is timely, namely Tatum's claim that CDCR retaliated against her by offering her a lower-paying position at a different facility when she sought to return to work in May 2006.  In this regard, it is undisputed that Tatum filed a second charge of discrimination with the EEOC in July 2006, received a right-to-sue letter in August 2006, and amended her complaint to add this claim of retaliation in September 2006. To the extent Tatum argues that she can state actionable claims of retaliation predicated upon retaliatory acts that allegedly occurred in 2004, the Court disagrees.  Tatum did not file an EEOC charge within three hundred days after these alleged unlawful acts of retaliation occurred.  See 42 U.S.C. § 2000e-

5(e)(1) ("A charge under [Title VII] shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]").  It is undisputed that the last alleged act of unlawful retaliation that took place in 2004 occurred on or before June 10, 2004, and that Tatum filed her EEOC charge more than three hundred days later on April 28, 2005.  As such, Tatum's Title VII retaliation claims predicated upon retaliatory acts occurring on or before June 10, 2004 are time-barred.  The Court also notes that Tatum concedes that her claim that CDCR retaliated against her by not offering her a promotion in May 2005 is untimely. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment at p. 17:16-18.)

　　　Thus, the remaining question is whether Tatum has an actionable claim of retaliation based on CDCR's decision to offer her a position at a different facility when she sought to return to work in May 2006. To make a prima face case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) she was subject to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  A lateral transfer can constitute an adverse employment action.  Id. at 1241-42.  As to the causation element, the passing of time between the protected

activity and the adverse action makes it more difficult to prove causation. Porter v. California Dep't of Corrections, 419 F.3d 885, 895 (9th Cir. 2005). Where 10 months separated a plaintiff's termination from her protected activity, temporal proximity alone was insufficient to prove a causal connection between the two. Grosz v. The Boeing Company, 455 F.Supp.2d 1033, 1044 (C.D. Cal. 2006); see also Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (no retaliation inferred when approximately nine months between the date of complaint and adverse action). If plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer to advance legitimate, non-retaliatory reasons for any adverse actions taken against plaintiff, who has the ultimate burden to show that the defendant employer's proffered reasons are pretextual. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003). To establish that a defendant's non-retaliatory explanation is a pretext for unlawful retaliation, a plaintiff may rely on circumstantial evidence. However, such evidence "must be specific and substantial to create a genuine issue of material fact." Cornwell v. Electra Central Credit Union, 439 F.3d. 1018, 1029 (9th Cir. 2006). A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence." <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256, (1981).  Plaintiff bears the ultimate burden of submitting evidence indicating that the Defendants' proffered reason is merely a pretext for a retaliatory motive.  <u>Nilsson v. City of Mesa</u>, 503 F.3d 947, 954 (9th Cir. 2007).

In the present case, the Court finds that Tatum failed to offer sufficient evidence to make a prima facie case of retaliation.  Specifically, Tatum failed to offer sufficient evidence demonstrating that the proposed transfer was materially adverse.  In this regard, Tatum's only evidence is her uncorroborated self-serving declaration attesting that the proposed transfer was inferior in various ways to her former position. (See footnote 4, <u>supra</u>.)  The Court finds this showing insufficient to create a genuine issue of material fact on the question of whether Tatum was subject to a materially adverse employment action.  <u>See</u> <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (uncorroborated self-serving declaration insufficient to create a genuine issue of material fact).  Tatum's declaration is simply not meaningful evidence from which a fact finder could compare her former position with the proposed transfer to determine if the positions were materially similar.

Moreover, even assuming Tatum was subject to a material adverse employment action, Tatum failed to offer sufficient evidence on the issue of causation.  Tatum did not offer direct evidence demonstrating a causal connection between Tatum's protected activity (EEOC complaint) and the adverse employment action (proposed transfer), nor can a causal connection be inferred.  While close proximity in time between Tatum's EEOC complaint and the proposed transfer could support an inference of a causal connection, causation cannot be inferred under the circumstances because more than twelve months separated Tatum's first EEOC complaint and the proposed transfer.  The lack of temporal proximity without some additional circumstance suggesting causation makes it too difficult for Tatum to create a genuine issue of material fact as to causation.  See Vasquez v. County of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2003).  Tatum has not offered any evidence from which a trier of fact could find a causal connection between her EEOC complaint and the proposed transfer.  Finally, even assuming causation, Tatum failed to offer sufficient evidence on the issue of pretext.  Tatum neither offered direct evidence of pretext nor specific and substantial evidence indicating that CDCR's non-retaliatory reason given for the proposed transfer, namely that CDCR could not accommodate Tatum's request to place her in a position at CMF that was not in the proximity or under the supervision of

Jensen or Zeh, was merely a pretext for retaliation.  See Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1188-89 (9th Cir. 2005) (even assuming causation, summary judgment for employer granted where plaintiff failed to rebut the legitimate reason for giving adverse performance review).  For instance, Tatum did not offer evidence indicating that CDCR could have offered her a position at CMF in May 2006 that accommodated her restrictions.  Nor did she offer specific and substantial evidence indicating that the proposed transfer was inferior in any meaningful way to her former position at CMF.  In short, Tatum failed to rebut CDCR's legitimate reason given for the proposed transfer by showing that a discriminatory reason more likely motivated CDCR or that CDCR's proffered explanation for the proposed transfer is unworthy of credence.  There is no compelling evidence before the Court supporting the notion that Tatum was offered a transfer for any other reason than to accommodate her restrictions.  Accordingly, the Court grants summary judgment in favor of Defendants on Tatum's third claim, retaliation pursuant to Title VII.[5]

---

[5] In light of the foregoing, the Court need not consider the alternative arguments raised by Defendants in support of their motion for summary judgment.  In addition, the Court need not consider the collateral estoppel arguments raised by Tatum in her cross-motion for summary adjudication.

III. ORDER

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED and Tatum's cross-motion for summary adjudication is DENIED.  The Clerk of the Court is directed to enter judgment in accordance with this Order.

IT IS SO ORDERED.

Dated:  August 8, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE